UNITED STATES of America

v.

**Adrian Dale STEWART.**

**UNITED STATES of America**

v.

**Everette Lamar SIMS.**

**Nos. 91–03068–RV, 91–03087–RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

Dec. 9, 1991.

---

Pamela A. Moine, Asst. U.S. Atty., for plaintiff.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for defendants.

## ORDER

VINSON, District Judge.

Pending are the motions to dismiss the indictments, based on double jeopardy grounds, filed by the defendants in the above-styled cases.[1]

### I. *Stewart factual background.*

On November 22, 1990, defendant Stewart was arrested on Eglin Air Force Base. As a result of his arrest, defendant Stewart was issued six hunting citations charging him with, *inter alia,* possession of a gun within a closed hunting area, in violation of Title 10, *United States Code,* Section 2671.

On January 2, 1991, defendant Stewart appeared before the Honorable Susan Novotny, United States Magistrate Judge. The defendant waived counsel and pleaded guilty to all charges and was sentenced to eighteen (18) months' probation, $425 in fines, and $60 in special monetary assessments. On June 20, 1991, defendant Stewart's probation was revoked, and he was sentenced to sixty days' imprisonment, for marijuana use.

On July 24, 1991, defendant Stewart was charged in a single-count indictment with possession of a firearm by a convicted felon, in violation of Title 18, *United States Code,* Section 922(g)(1). This charge was based on defendant Stewart's possession of a shotgun on Eglin Air Force Base on November 22, 1990. Defendant Stewart ultimately pleaded guilty to the single-count indictment, reserving his right to appeal the double jeopardy issue. Defendant Stewart appeared before me for sentencing on November 26, 1991.

### II. *Sims factual background.*

On November 25, 1990, defendant Everette Lamar Sims was arrested on Eglin Air Force Base. Defendant Sims also received citations charging him with various hunting violations, including unauthorized possession of a shotgun in a closed hunting area, in violation of Title 10, *United States Code,* Section 2671. Defendant Sims appeared before Magistrate Judge Novotny on January 2, 1991, and pleaded guilty to all charges, including the firearm possession charge. Like defendant Stewart, defendant Sims was sentenced to eighteen months' probation.

On September 26, 1991, defendant Sims was charged in a single-count indictment with possession of a firearm by a convicted felon in violation of Title 18, *United States Code,* 922(g)(1). As in defendant Stewart's case, the indictment is premised on defendant Sims' possession of a firearm on Eglin Air Force Base. Sims has also entered a plea of guilty, reserving his right to appeal the double jeopardy issue, and is scheduled

---

1. Both defendants previously entered guilty pleas to the charge set out in the indictments, reserving the right to assert the double jeopardy claim.

for sentencing before me on January 31, 1992.

### III. *Discussion.*

Both of the defendants rely upon application of the double jeopardy clause, as recently construed in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The double jeopardy clause of the Fifth Amendment has been interpreted to provide three safeguards. It protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). *See also United States v. Rivera–Feliciano*, 930 F.2d 951, 953 (1st Cir.1991), *petition for cert. filed*, No. 91–5025 (July 2, 1991); *Esposito v. United States*, 912 F.2d 60, 63 (3d Cir.1990), *cert. dismissed*, —— U.S. ——, 111 S.Ct. 806, 112 L.Ed.2d 1032 (1991).

■ In the context of multiple punishments, the analytic framework established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), discussed *infra*, governs the entire double jeopardy determination.[2] However, when a claim of successive prosecutions is raised, the recent Supreme Court decision in *Grady, supra*, mandates a two-step approach. First, the district courts apply the *Blockburger* analysis. If this test is satisfied, the second level of analysis outlined by *Grady* is undertaken.

In *Blockburger*, the Supreme Court of the United States held that two offenses will not be considered "the same" for double jeopardy purposes if each offense re-

quires proof of an additional fact or element that the other does not. 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.[3] *See also United States v. Farmer*, 923 F.2d 1557, 1562 n. 10 (11th Cir.1991); *United States v. Gonzalez*, 921 F.2d 1530, 1536 n. 5 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991); *United States v. Maldonado–Rivera*, 922 F.2d 934, 980–81 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). The Double Jeopardy Clause prohibits successive prosecutions for two offenses which are the same under the *Blockburger* analysis. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187, 194 (1977).[4] This analysis focuses on the elements of the offenses; if each requires proof of a fact that the other does not, then *Blockburger* is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *Felix, supra*, 926 F.2d at 1525.

In the context of successive prosecutions, however, the Supreme Court of the United States has recently added a further refinement of *Blockburger*. In *Grady, supra*, the defendant was involved in a traffic accident in which he crossed the double yellow center line and struck two oncoming vehicles. The driver of one of the other vehicles died that same day. The defendant subsequently pleaded guilty to traffic infractions of driving while intoxicated and failing to keep right of the median. After the defendant was sentenced on the traffic infractions, the State sought to prosecute him for vehicular homicide and assault. The State represented that it intended to base its case on proof that the defendant drove while intoxicated and failed to keep to the right of the median. The Supreme

---

**2.** The *Blockburger* test was developed "in the context of multiple punishments imposed in a single prosecution." *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985).

**3.** "[I]t has long been understood that separate statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition." *United States v. Felix*, 926 F.2d 1522, 1525 (10th Cir.), *cert. grant-*

ed, —— U.S. ——, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991) (quoting *Brown, supra*, 432 U.S. at 164, 97 S.Ct. at 2225, 53 L.Ed.2d at 193).

**4.** Furthermore, under the *Blockburger* analysis, if only one offense requires proof of an additional fact that the other does not, then the other offense is a lesser included offense and the double jeopardy prohibition is implicated as well. *See also Rivera–Feliciano, supra*, 930 F.2d at 953–54.

Court held that the prosecution for vehicular homicide and assault was barred on double jeopardy grounds:

> By its own pleadings, the State has admitted that it will prove *the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2094, 109 L.Ed.2d at 565–66 (emphasis added).

In *Grady,* the Court held that if the *Blockburger* test is satisfied, the district court must then go further and determine if, "to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at ——, 110 S.Ct. at 2087, 109 L.Ed.2d at 557 (footnote omitted). Thus, if application of the *Blockburger* test reveals that the offenses are identical or that one is a lesser included offense of the other, then a second prosecution would amount to double jeopardy and the analysis ends. *See, e.g., Rivera–Feliciano, supra,* 930 F.2d at 953–54. However, even if the court determines that the offenses are not identical or that one is not a lesser included offense of the other, "successive prosecutions will [still] be barred *in some circumstances* where the second prosecution requires the relitigation of factual issues already resolved by the first." *Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2092, 109 L.Ed.2d at 563 (quoting *Brown, supra,* 432 U.S. at 166–67 n. 6, 97 S.Ct. at 2226 n. 6, 53 L.Ed.2d at 195 n. 6) (emphasis added).[5]

The Supreme Court in *Grady* carefully avoided adopting a "same evidence" or "same transaction" test. Instead, it seems to adopt a "same conduct" test. *Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2093 and 2094 n. 15, 109 L.Ed.2d at 564 and 566 n. 15. *See also Gonzalez, supra,* 921 F.2d at 1538. Indeed, the majority recognized that a true same evidence or actual evidence test would prevent the government from introducing *any* evidence that was introduced in a preceding prosecution,[6] which would have conflicted with the Court's holding in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). In *Dowling,* the Court held that the presentation of specific evidence in one trial does not forever bar the government from introducing the same evidence in a subsequent proceeding. *Id.* at 348, 110 S.Ct. at 672, 107 L.Ed.2d at 717. "[T]he fact that the evidence that the government may introduce in this case may be the same as that which it introduced in [a prior case] ... does not in itself signify a prohibited successive prosecution." *Esposito, supra,* 912 F.2d at 65. *See also Gonzalez, supra,* 921 F.2d at 1538; *Farmer, supra,* 923 F.2d at 1564, n. 16.[7]

■ A. *Application to the subsequent indictment and prosecution.* Although the defendants' double jeopardy arguments initially have some superficial appeal, it becomes rapidly apparent that these cases are distinguishable from the facts presented in *Grady.*[8] In *Grady,* the State explicitly represented to the court its intention to rely, as the basis for its vehicular homicide and assault prosecution, on the entirety of the three traffic infractions to which the defendant had already pleaded guilty.

5. The appellate courts have since limited *Grady* in application to single act crimes. *See, e.g., Gonzalez, supra,* 921 F.2d at 1537.

6. "This is not an 'actual evidence' or 'same evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564 (footnote omitted).

7. "The mere fact that they are part of the same 'transaction' or can be proven by the same 'evidence' is not sufficient to bar successive prosecutions under the language in *Grady.*" *Gonzalez, supra,* 921 F.2d at 1538 (footnote omitted).

8. The defendants in these cases do not argue that their prosecutions are barred by the *Blockburger* test. It is clear that the two offenses involved, possession of a firearm in a closed area and possession of a firearm by a convicted felon, readily satisfy *Blockburger.* Therefore, I proceed to discuss the second tier of analysis created by *Grady* to apply to successive prosecutions.

Thus, proof of the *entire* conduct which constitutes an offense for which the defendant had already been prosecuted was necessary to the State's case.

> Under this second level of analysis, the Court determined that the successive prosecution for homicide would require the government to prove *the entirety* of the conduct of driving while intoxicated and failing to keep to the right of the median for which the defendant was already convicted. Accordingly, the Court held the subsequent prosecution was barred by the double jeopardy clause. *United States v. McKinney*, 919 F.2d 405, 417 n. 13 (7th Cir.1990) (emphasis added).

In this case, however, the government has never represented that it intends to prove the offense of possession of a firearm by a convicted felon, or an essential element thereof, by proof of the conduct *constituting the offense* for which the defendants have already been prosecuted (possession of a firearm in a closed area). Rather, the only conduct which the government need rely on to prove the offense now charged is that the defendants, having prior felony convictions, possessed firearms. That the defendants were hunting in a closed area on Eglin Air Force Base is irrelevant to the current charges.

As I noted above, the Supreme Court in *Grady* carefully eschewed a same evidence or transaction test, in favor of a "same conduct" test. The Court only barred subsequent prosecutions when the government, to establish an *essential element,* would prove conduct which *constitutes an offense* for which the defendant has already been prosecuted. The mere fact that evidence of a firearm possession is common to both prosecutions does not implicate the double jeopardy prohibition—to bar such evidence would be inconsistent with both *Grady* and *Dowling*.

> Adoption of a "same transaction" test would bar the homicide and assault prosecutions even if the State were able to establish the essential elements of those crimes without proving the conduct for which Corbin was previously convicted.

*Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2094 n. 15, 109 L.Ed.2d at 566 n. 15. This is such a case; the Government, in order to prove the offense of possession of a firearm by a convicted felon, need not prove the entire conduct for which the defendants were convicted, i.e., possession of a firearm in a closed area, but only the possession of a firearm. The location is immaterial. Therefore, I find that the prosecutions in this case do not infringe upon the double jeopardy clause of the Fifth Amendment.

■ B. *Application to the subsequent sentencing.* On the other hand, application of the United States Sentencing Commission Guidelines to this case does raise double jeopardy concerns. Under Sentencing Guideline 2K2.1(a)(7), the base offense level for possession of a firearm by a convicted felon is level 12. However, Sentencing Guideline 2K2.1(b)(2) provides:

> If the defendant ... possessed all ammunition and firearms solely for *lawful sporting purposes* or collection, *and did not unlawfully* discharge or otherwise unlawfully *use such firearms* or ammunition decrease the offense level determined above to level 6. § 2K2.1(b)(2) (emphasis added).

In each case, the defendants were originally convicted of hunting violations, and the present charge relates to possession of a shotgun at the time of the hunting violations. Therefore, the defendants would not be entitled to the six-level reduction provided by guideline 2K2.1(b)(2). Thus, the entire conduct constituting the offenses for which the defendants have already been convicted is brought directly to bear on their sentences for possession of a firearm by a convicted felon. The guideline incorporates a "use" adjustment for sentencing that is not a part of the offense. In order to deny the defendants the benefit of the six-level reduction, I would have to consider "the entirety of the conduct for which [the defendants were] convicted." *Grady, supra,* 495 U.S. at ——, 110 S.Ct. at 2094, 109 L.Ed.2d at 565–66. I conclude, therefore, that these defendants may not be deprived of the six-level reduction in the

base offense level, consistent with *Grady*. Accordingly, it is my determination that the hunting violations cannot be considered in conjunction with guideline 2K2.1(b)(2) without running afoul of the double jeopardy prohibition and *Grady*. The reduction of Section 2K2.1(b)(2) applies. Therefore, both defendants are entitled to a base offense level of 6 (instead of 12), which may be further reduced by two levels for acceptance of responsibility under guideline 3E1.1(a), leaving an offense level of 4 for sentencing purposes, subject to any other adjustments that may be applicable under the Sentencing Guidelines.

### IV. *Conclusion.*

Because I find that the prosecutions of defendants Stewart and Sims for possession of a firearm by a convicted felon do not require the government to prove the same "conduct" which constitutes an offense for which the defendants have already been prosecuted, I conclude that these prosecutions are not barred by the double jeopardy clause as interpreted by the Supreme Court in *Grady*. However, because the six-level reduction authorized by the United States Sentencing Commission Guidelines for lawful use of the firearm rests entirely on whether the prior offenses of possession of firearms within a closed area are considered, I conclude that they may not be considered and the six-level reduction may not be denied these defendants consistent with the double jeopardy clause.

DONE AND ORDERED.